IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEANDRE D. CURRINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:22-cv-397-RAH |
| | ) |
| DUSTIN R. FOLK, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Pending before the Court is the Motion for Summary Judgment filed by Defendant Dustin Folk. Upon consideration of the briefs, evidence, and applicable law, and for the reasons that follow, the motion is due to be granted.

### FACTS

Deandre D. Currington was the subject of several court-issued protection orders in 2022 that restrained and enjoined him from harassing, stalking, threatening and contacting A.G.[1]

The Ozark Municipal Court issued the first protection order on March 14, 2022. (Doc. 139-25 at 5.) That order barred Currington from harassing, stalking, annoying, threatening, or contacting A.G. or engaging in any conduct that would place A.G. in reasonable fear of bodily injury. The order also restrained and enjoined Currington from having physical or violent contact with A.G. or her property, and ordered him to stay away from A.G.'s residence and place of employment. (*Id.* at 4.)

---

[1] Initials are used throughout the opinion to protect the privacy of the victim.

Four days later on March 18, 2022, A.G. reported to law enforcement that Currington had entered her home through the back door while she was asleep, showered, and began eating her food. (Doc. 139-1 at 3.) Four days after that, on March 22, 2022, A.G. reported to law enforcement that she believed Currington had turned off the power to her home from the power box behind the property. (Doc. 139-2 at 3.)

The next day, law enforcement was dispatched to A.G.'s home where A.G. reported that Currington had again entered her home and had demanded that she let him take a bath. (Doc. 139-3 at 3.) She also reported that after she told Currington that she would call the police, Currington hit her in the face and fled the home. (*Id.*)

On March 25, 2022, law enforcement again returned to A.G.'s home after A.G. reported that Currington was harassing her and trying to enter her home. (Doc. 139-4 at 4.) Upon arrival, law enforcement found Currington on A.G.'s front porch, and upon speaking with him, Currington stated that he was there to take a bath. Currington was arrested for domestic violence harassment. While conducting a search incident to arrest, law enforcement found marijuana and methamphetamine in a black bag on Currington's person. (*Id.*) Another protective order was issued against Currington the following day. (Doc. 139-26.)

Currington, however, did not stop. On March 30, 2022, law enforcement was called to A.G.'s home again. Upon arrival, officers found Currington on A.G.'s back steps, where he was holding a bag of marijuana in his left hand and a screwdriver in his right hand. (Doc. 139-6 at 3.) A.G. told law enforcement that she believed Currington had tried to enter her home again. (*Id.* at 4.) Currington was arrested and taken to the Dale County Jail.

On April 7, 2022, law enforcement was dispatched to the area near A.G.'s home after a nearby homeowner reported a suspicious male walking between homes. (Doc. 139-8 at 3–4.) The neighbor identified Currington as the man. Law

enforcement then visited A.G.'s home where they found Currington nearby. Currington was arrested approximately fifty feet from A.G.'s back door. (*Id.*) After he was arrested, a large piece of broken glass was found in Currington's pocket. Currington claimed he used it to sharpen pencils. (*Id.*) As a result, another protective order was issued against Currington. (Doc. 139-27.)

But Currington's conduct continued. On April 13, 2022, law enforcement was dispatched near A.G.'s home after receiving a report of an individual exposing himself. (Doc. 139-9 at 5.) Law enforcement encountered Currington, who denied exposing himself. He was released from the scene. (*Id.*)

Law enforcement was again dispatched to A.G.'s home on April 16, 2022, on a complaint by A.G. about Currington being on her front porch. (Doc. 139-10 at 3–4.) Then, on April 29, 2022, law enforcement found Currington within 150 feet of A.G.'s home (doc. 139-11 at 3), and on May 4, 2022, Currington was found behind A.G.'s porch, approximately fifteen to twenty feet from the home (doc. 139-12 at 3–4).

Currington appeared before a municipal judge on May 10, 2022, where he pleaded guilty to four protection order violations. (Doc. 139-28.) In each case, he received a suspended sentence conditioned on him staying away from A.G.

On June 6, 2022, Corporal Dustin Folk, Deputy Chief Michael Bryan, and Commander Chris Juneau with the Ozark Police Department were dispatched to the 100 block of Herring Avenue (near A.G.'s home) in response to a suspicious person complaint made by a neighbor of A.G. (Doc. 139-14 at 3.) The neighbor reported that a man was staring at her house and was pacing back and forth when she entered her vehicle. (*Id.*; Doc. 139-16 at 2.) Officers Folk, Bryan, and Juneau arrived at the scene and found Currington standing in the backyard of an abandoned residence approximately 166 feet from A.G.'s home. (Doc. 139-14 at 9.) As they approached, Currington took on an aggressive posture, which they believed indicated he was

about to flee. (*Id.*) Officer Folk attempted to take control of Currington's arms, but he resisted. (*Id.*) A struggle ensued and Currington attempted to hit and kick the officers. (*Id.*) Eventually, Officer Folk used a taser to incapacitate Currington and place him under arrest. (*Id.*) After Currington was arrested, the officers spoke with A.G., who stated that Currington had attempted to forcefully enter her home earlier that day. (*Id.* at 10; Doc. 139-18 at 12.)

Officer Folk included this information in a probable cause affidavit[2] (doc. 139-20) that he used on June 8, 2022, to obtain a warrant for Currington's arrest for attempting to elude, resisting arrest, assault in the second degree, stalking, and a violation of a protection order (docs. 139-21, 139-22).

Currington commenced this suit on July 7, 2022, claiming false imprisonment and perjury against Officers Bryant and Juneau stemming from his June 6, 2022, arrest. (Doc. 1 at 4; Doc. 150 at 1.) On July 19, 2022, Currington amended his lawsuit to include Officer Folk, claiming that Officer Folk provided false information to the magistrate who issued the arrest warrant.

On September 21, 2022, the five charges were presented to a grand jury. (Doc. 139-35 at 2.) Indictments were returned on the charges for second degree assault, resisting arrest, and attempting to elude. The charges for stalking and violating a protective order were no-billed because A.G. refused to cooperate. (*Id.* at 1–2.) On April 12, 2023, Currington pleaded guilty to assault, resisting arrest, and attempting to elude and was given a suspended sentence of six months. (Doc. 139-36 at 6.)

## LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting

---

[2] For simplicity and consistency, Officer Folk's sworn charging deposition (doc. 139-20) will be referred to as a probable cause affidavit throughout this opinion.

Fed. R. Civ. P. 56(a)). "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

## DISCUSSION

At the outset, it is not clear under which legal theory Currington asserts his Fourth Amendment claim. He states "false imprisonment" and "wrongful arrest" in his Complaint as his grounds for relief and argues that his arrest on June 6, 2022, was without probable cause because the officers supplied false information to obtain the arrest warrant.

False arrest and malicious prosecution are distinct legal grounds for challenging the constitutionality of a seizure. "A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir.

5

2020). "These claims accrue when either the seizure ends or the plaintiff is held pursuant to legal process." *Id.* By contrast, malicious prosecution claims "require[] a seizure 'pursuant to legal process,'" such as warrant-based arrests. *Id.* (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)).

There are two distinct seizures that Currington challenges. The first is his warrantless arrest on June 6, 2022, near A.G.'s home. This is a false arrest claim because he was seized without legal process. The second is his detention pursuant to the arrest warrants obtained by Officer Folk. This is a malicious prosecution claim because the arrest was pursuant to legal process, *i.e.*, the warrants. Both will be addressed in turn against Officer Folk's assertion of qualified immunity.[3]

Qualified immunity protects government officials from suit if (1) they are "performing discretionary functions" and (2) "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an affirmative defense. The "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up). To determine whether an officer was performing a discretionary function, courts ask whether the officer was performing a legitimate job-related function, through means that were within his power to use. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

"[I]nvestigating and prosecuting violations of the law clearly fall within the scope of official duties of a law enforcement officer." *Grider v. City of Auburn*, 618 F.3d 1240, 1267–68 (11th Cir. 2010). Effectuating arrests and responding to emergency calls are also discretionary functions of law enforcement officers. *See,*

---

[3] Currington voluntarily dismissed his claims against Officers Bryan and Juneau. (Doc. 148.)

*e.g.*, *Crosby v. Monroe County*, 394 F.3d 1328, 1323 (11th Cir. 2004); *Carter v. Gore*, 557 F. App'x 904, 907 (11th Cir. 2014). Officer Folk did just that when he pursued criminal charges against Currington. Therefore he has carried his initial burden of showing he acted within the scope of his discretionary authority.

Once an officer seeking qualified immunity shows that he acted in a discretionary capacity, the burden shifts to the plaintiff to show that the officer is not entitled to qualified immunity. "A plaintiff may rebut this entitlement by showing that the government officials (1) committed a constitutional violation; and (2) that this violation was 'clearly established' in law at the time of the alleged misconduct." *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023).

Here, Currington has not shown a constitutional violation for either of his claims. Therefore, Officer Folk is immune from suit, and his motion for summary judgment is due to be granted.

### False Imprisonment Claim

Currington's false arrest claim is easily addressed. "Under the 'any-crime rule' an officer is 'insulate[d] from false-arrest claims so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred.'" *Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023) (quoting *Williams*, 965 F.3d at 1158). Officer Folk undoubtedly had probable cause to arrest Currington on June 6, 2022, for—at a minimum—resisting arrest. Under Alabama law, a person commits the crime of resisting arrest if he "intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or of another person." Ala. Code. § 13A-10-41; *T.D.F. v. State*, 264 So. 3d 108, 120 (Ala. Crim. App. 2018). The facts as described by Officer Folk in the probable cause affidavit show that Currington was attempting to flee and struck and kicked the officers. Currington does not provide any evidence to counter Officer

7

Folk's description of the events. In fact, Currington was later indicted on the charge and pleaded guilty to it, as he did to the assault charge.

Thus, Officer Folk has satisfactorily shown that he had probable cause to arrest Currington for resisting arrest, and Currington has failed to show that he did not. As such, Officer Folk is entitled to qualified immunity for Currington's false arrest claim. *See Garcia*, 75 F.4th at 1187.

### Malicious Prosecution Claim

Currington also asserts a Fourth Amendment violation for malicious prosecution based on Officer Folk's allegedly false statements in the probable cause affidavit supporting the arrest warrants for stalking and violation of a protection order.[4]

Malicious prosecution is a constitutional tort cognizable under § 1983. *See, e.g., Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003); *Kelly v. Curtis*, 21 F.3d 1544, 1554–55 (11th Cir. 1994). A Fourth Amendment malicious prosecution claim requires that (1) "the legal process justifying [the plaintiff's] seizure was constitutionally infirm," (2) the "seizure would not otherwise be justified without legal process," and (3) "the criminal proceedings against [the plaintiff] terminated in his favor." *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1329 (11th Cir. 2024) (quoting *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) (*Luke I*)). A claim for malicious prosecution accrues once a defendant is seized "pursuant to legal process," such as a warrant. *Williams*, 965 F.3d at 1158. A Fourth Amendment violation

---

[4] Officer Folk argues that the Amended Complaint alleges he supplied false information in the probable cause affidavit only as to the stalking charge. (Doc. 159 at 7.) The Supreme Court has cautioned, however, that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court finds that Currington's Amended Complaint asserts a malicious prosecution claim against Officer Folk as to both charges. (*See* doc. 7 at 2–4 (alleging that Officer Folk falsely stated that Currington has a history of violating protection orders).)

8

occurs "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id.* (quoting *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017)).

Currington has failed to meet his burden to prove the first element of a malicious prosecution claim: that the legal process justifying his seizure—the warrant—was constitutionally infirm.

To prove that a warrant was constitutionally infirm, Currington must show that Officer Folk "intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Sylvester*, 94 F.4th at 1329 (quoting *Luke v. Gulley*, 50 F.4th 90, 96 (11th Cir. 2022) (*Luke II*)). Such a showing requires a two-step process. First, Currington must "explain how any inaccuracies were material, *i.e.*, 'necessary to support the warrant.'" *Luke II*, 50 F.4th at 95–96. "If the affidavit still manages to establish probable cause for the crime charged even after correcting the defendant's purported lies, misleading statements, and omissions, then that misconduct did not cause the plaintiff any harm." *Sylvester*, 94 F.4th at 1330. Second, Currington "must create a triable issue as to the defendant's state of mind when authoring the affidavit." *Id.* "That is, there must be evidence in the record that would allow a reasonable jury to find that the inaccuracies in the affidavit did not result from a 'reasonable mistake' but stemmed from intentional or reckless deception." *Id.* If Currington satisfies both requirements, he meets his burden to show that Officer Folks is not entitled to qualified immunity because an "officer who intentionally or recklessly submits an affidavit plagued by material misstatements or omissions violates clearly established law" under Eleventh Circuit precedent. *Id.* (citing *Butler v. Smith*, 85 F.4th 1102, 1112 (11th Cir. 2023)).

In his summary judgment motion, Officer Folk states that he made no material misstatements or omissions, let alone do so intentionally or recklessly. Currington points to at least four alleged misstatements in Officer Folk's probable cause

9

affidavit. He states that Officer Folk falsely stated that (1) A.G.'s neighbor feared for her safety and the safety of her children (doc. 7 at 2–3), (2) Currington was around A.G.'s home and tried to force his way into A.G.'s home on June 6, 2022 (doc. 7 at 3), (3) Currington was within 166 feet of A.G.'s home on that date, and (4) Currington had a history of violating protection orders (doc. 7 at 3). Officer Folk's disputes that these assertions were false and material to the magistrate's probable cause determination.

First, Currington argues that, in the probable cause affidavit, Officer Folk falsely stated A.G. feared for the safety of herself and her children. (*Id.* at 2.) In the affidavit, Officer Folk stated, "[Currington] continued to watch [the neighbor] making her fear for her safety and the safety of her children." (Doc. 139-20 at 2.) He also stated that, on a follow-call after the incident, the neighbor "confirmed what she had already provided" and "also added that she feared for her safety and the safety of her children because she did not know [Currington's] intentions." (*Id.* at 4.) Currington argues that these statements were false because the neighbor, in her written statement, did not state that she feared for her safety. (*See* doc. 139-16.)

Currington has failed to show that these statements, even if false, were necessary to support the warrant. The warrant charged Currington with stalking A.G. and violating a protection order. These charges concerned Currington's conduct toward A.G, not the neighbor. Currington was not charged with any crimes stemming from his conduct toward the neighbor. As such, whether or not the neighbor feared for her safety was irrelevant as to whether probable cause existed to charge Currington with stalking A.G. or violating the protection order.

Currington also claims that Officer Folk falsely stated that the neighbor provided a written statement detailing that she feared for her safety. And as he points out, her written statement does not mention any fear for her safety. (Doc. 139-16.) But Officer Folk did not state that the neighbor expressed fear in her *written*

10

statement. Rather, he stated that she expressed her fear in a telephone call. (Doc. 139-20 at 4.) Thus, Currington has not demonstrated that any of Officer Folk's statements with respect to the neighbor were false or misleading.

Second, Currington argues that Officer Folk falsely stated that A.G. contacted the police to report Currington's behavior on June 6, 2022, and that he falsely claimed that Currington attempted to enter her home earlier that day. (Doc. 7 at 3.) For support, Currington provides sworn affidavits from A.G. and a friend. In her affidavit, A.G. states that on June 6, 2022, she "never called police concerning the defendant on [her] property, residence, or knocking at [her] door nor stalking. [Those] [a]llegations were false." (Doc. 7-1 at 7.) In the friend's affidavit, the friend states that she was with A.G. all day on June 6, 2022, and "do[es] not recall seeing [Currington]." (*Id.* at 9.)

As an initial matter, Currington is incorrect that Officer Folk stated A.G. initiated contact with police. Instead, Officer Folk's affidavit states, "[A]fter Mr. Currington was arrested, [A.G.] was contacted." That statement does not indicate that A.G. first contacted the police. (Doc. 139-20 at 3.) Moreover, Officer Folk's description of A.G.'s statements was consistent with the certified transcript of her conversation with Deputy Chief Bryan. Officer Folk's affidavit states, "[A.G.] advised [that] Mr. Currington was just at her residence trying to forcefully enter the residence. [A.G.] advised Mr. Currington had to be pushed out of the residence . . . ." (*Id.*) And, according to the transcript, A.G. told Deputy Chief Bryan that Currington went to her residence around 11 A.M. or 12 P.M. on June 6, 2022 and that she "told [Currington] to leave [her] alone and [not] come back," but Currington "walked in" anyway. (Doc. 139-18 at 6–7, 12.) Officer Folk accurately described the information A.G. provided to the police at the time.

Currington also has failed to show that the statements—even if inaccurate— were the product of intentional or reckless deception by Officer Folk. *See Sylvester*,

11

94 F.4th at 1329. The affidavits provided by Currington do not create a genuine dispute of fact as to Officer Folk's actions at the time he sought the arrest warrant. While there may be some inconsistencies in the time line of events between the after-the-fact executed affidavits and Officer Folk's probable cause affidavit, they are nonmaterial, trivial, and not a gross misstatement of what had occurred. In fact, Officer Folk's recitation of A.G.'s statements in the probable cause affidavit was consistent with A.G.'s earlier recorded statements to police about her interactions with Currington that day. Currington does not suggest that Officer Folk had any reason at the time to disbelieve A.G.'s statements to the police. *Cf. Hernandez v. Sheriff of Manatee Cnty.*, No. 24-10011, 2025 WL 1927522, at *3 (11th Cir. July 14, 2025) (per curiam) ("[O]nly an investigative defect—like when an officer 'consciously and deliberately d[oes] not make an effort to uncover reasonably discoverable, material information'—undermines probable cause." (quoting *Washington v. Rivera*, 939 F.3d 1239, 1246 (11th Cir. 2019)). Officer Folk was entitled to rely on A.G.'s statements, absent any reason to doubt their veracity. *See Butler*, 85 F.4th at 1114. These post-hoc assertions by A.G. and her friend—inconsistent with the information known to police at the time—are insufficient to create a genuine dispute of material fact as to Officer Folk's mental state. *See Harris v. Hixon*, 102 F.4th 1120, 1125 (11th Cir. 2024) ("[T]he Fourth Amendment does not require a perfect investigation before an arrest is made or a charge is brought.").

Third, Currington argues that Officer Folk's statement that Currington was approximately 166 feet from A.G.'s home on June 6, 2022, was false and material to the magistrate's probable cause determination.[5] Currington's argument is due to

---

[5] Currington also appears to argue that Officer Folk falsely stated that the state court ordered him to stay at least 300 feet from A.G.'s residence. (Doc. 152 at 2.) This accusation is incorrect. Officer Folk did not state in the probable cause affidavit that Currington was ordered to stay 300 feet from A.G.'s residence (doc. 139-20), and, in any event, it is not material to the protection order violation charge because the statements in the affidavit established probable cause to believe that he violated

12

be rejected for several reasons. For one, Currington has not provided any affirmative evidence to demonstrate that this statement is inaccurate beyond a conclusory affidavit in which he states that he was not within 166 feet of A.G.'s home. (Doc. 152 at 2.) This is hardly sufficient to carry his burden.

Moreover, even if he could show that the statement was inaccurate, Currington cannot show that the statement was necessary to support a probable cause determination because Officer Folk's probable cause affidavit contained enough facts to sustain the stalking and protection order violation charges even without this statement. (*See* doc. 139-22.) Stalking in the first degree requires the state to prove that the defendant: (1) "intentionally and repeatedly follow[ed] or harass[ed] another person" on more than one occasion, (2) "made a 'credible threat,'" and (3) "intended to place the victim in reasonable fear of death or serious bodily injury." *Mims v. State*, 816 So. 2d 509, 513 (Ala. Crim. App. 2001) (quoting *Hayes v. State*, 717 So. 2d 30, 33 (Ala. Crim. App. 1997)); Ala. Code § 13A-6-90(a). A charge of violating a domestic violence protection order requires the state to prove that the defendant violated a provision of a valid domestic violence protection order. Ala. Code. § 13A-6-143.

Officer Folk's affidavit sufficiently established arguable probable cause for both offenses, regardless of the specific distance from A.G.'s residence that he was found. *See Butler*, 85 F.4th at 1116 (holding that "arguable-probable-cause standard" applies to qualified immunity assertion in a Fourth Amendment malicious prosecution claim). The arguable-probable-cause standard asks whether a "reasonable officer[] in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed" to charge the defendant with the particular offenses. *Id.* (quoting *Kingsland v. City of Miami*, 382

---

other provisions of the protection order. (*See* doc. 139-25 at 4 (ordering Currington to be excluded from A.G.'s residence).)

13

F.3d 1220, 1232 (11th Cir. 2004)). A reasonable officer could have believed that there was sufficient evidence to charge Currington with both crimes. As to stalking, Officer Folk testified that Currington was "known to frequent the area [where he was found on June 6, 2022] to harass, intimidate and violate a protective order against [A.G.]" (Doc. 139-20 at 2.) During the preceding three-month period, Currington "reportedly violated the protective order approximately 5 times"—including at least one instance of physical violence—causing A.G. "to fear for her safety." (*Id.* at 3.) And on June 6, 2022, Officer Folk found Currington within "direct eye shot" of A.G.'s residence, regardless of the exact distance. (*Id.* at 2.)

As to the protection order violation, Officer Folk stated in his probable cause affidavit that A.G. had a protection order against Currington prohibiting him from entering A.G.'s residence or making contact with her, and earlier that day, Currington went to A.G.'s home and attempted to gain entry in violation of the order. (*Id.*) These statements, in addition to Currington's history of protection order violations against A.G. (doc. 139-38 at 3–6 (Officer Folk's knowledge of Currington's arrest history)), were enough to establish probable cause for both the stalking and protection order violation charges. The statement that Currington was found approximately 166 feet away from A.G.'s residence is immaterial even if Currington could show it was inaccurate.

Lastly, Currington argues that Officer Folk falsely stated that Currington had a history of violating protection orders because he had not been the subject of a protection order before March 14, 2022. (Doc. 7 at 3.) He seems to argue that Officer Folk's statement was false because he claims he had only one protection order (not "order*s*" in the plural). (*Id.*) Currington's argument is easily dismissed: Currington was subject to at least three protective orders. These include the protection order issued by the Dale County District Court (doc. 139-25), and the two protection orders issued by the Ozark Municipal Court as conditions of his pretrial release

14

(docs. 139-26, 139-27). And Currington had a history of violating those protection orders. He pleaded guilty to four counts of protection order violations (doc. 139-28), and was questioned by police for numerous other violations. Thus, Officer Folk has shown that these statements were truthful, and Currington has failed to show that they were not.

In sum, Currington has failed to show that Officer Folk intentionally or recklessly provided materially inaccurate statements in the probable cause affidavit. As a result, Currington has failed to show a constitutional violation, and therefore Officer Folk has shown his entitlement to qualified immunity.[6]

## CONCLUSION

Based on the foregoing, it is **ORDERED** as follows:

(1)   Defendant's Motion for Summary Judgment (doc. 138) is **GRANTED**;

(2)   This action is **DISMISSED with prejudice**; and,

(3)   A separate judgment will issue.

**DONE** and **ORDERED** on this the 12th day of February 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The Court construes the Complaint to also seek injunctive relief in the form of an order directing the state court to dismiss the criminal charges stemming from his June 6, 2022, arrest. (Doc. 1 at 4.) His request is denied as moot, as the grand jury no-billed the charges of stalking and violation of a protection order and Currington pleaded guilty to the remaining charges. (Doc. 139-35.)